Reed, J.,
delivered the opinion of-the court.
The appeal in this case was prosecuted from a judgment on what purports to be the answer and cross complaint of the defendant in some existing suit. Neither the record nor abstract afford any information in regard to the nature or character of the original action in which the document was filed.
By sec. 57 of the Civil Code it is said in regard to counterclaims and as to what may be legally set up in an answer or cross complaint:
“ First. A cause of action arising out of the transaction set forth in the complaint, or answer, as the foundation of the plaintiff’s claim or defendant’s defense, or connected with the subject of the action.
“Second. In an action arising upon contract, any other cause of action arising also upon contract and existing at the commencement of the action.”
In the absence of all information in regard to the original suit, it is impossible to tell whether the alleged counterclaim wTas admissible in pleading, or whether proper subject-matter of any cross complaint under the first paragraph. It is clear from the nature of the claim, as disclosed in the pleading and by the evidence, that it did not originate in any contract, heuce, was not proper under that paragraph. It is therefore impossible for this court, for want of proper data, to determine whether the cross complaint set up facts to constitute a cause of action.
*578 In Bliss on Code Pleading, sec. 371, it is said, in speaking of matters that may he subjects of counterclaim under the first paragraph: — “ The cause of action that may be thus counterclaimed must be one which arises out of the contract or transaction set forth in the complaint as the foundation of the plaintiff’s claim, or connected with the subject of the action.” Whether this is the character of the claim attempted to be enforced we have no means of knowing. It may be treated as an original suit by this court, and the correctness of the judgment tested as in that class of cases.
It appears that appellee was, from January 10, 1888, to Januarj', 1892, county clerk and ex officio clerk of the board of county commissioners of Garfield county. It is alleged that while so acting he illegally overcharged for alleged official services the sum of $2,618.71, which claims were by him “ presented for audit and allowance to said defendant board, his verified claims and demands against defendant county * * * pretending and asserting that this defendant was indebted to him in the various amounts for the various services set forth in said exhibits, and the then board of countjr commissioners of said county relying- upon the pretensions, assurances and assertions of plaintiff, and at that time believing the said claims to be just and true and legal demands against said defendant county, paid the same.” By which allegations it would appear, briefly stated, that the money was obtained by fraud and the presentation of false and fraudulent bills, in the verification of which he had been guilty of perjury.
It is very doubtful if any claim originating in tort or fraud comes within either of the classes of cases designated in the statute as affording basis for a counterclaim. The decisions upon the point are conflicting, but we do not find it necessary to definitely determine the question in this ease. The allegation in the cross complaint is, that on different dates, from April 7, 1888, to January 11,1890, appellee “ presented for audit and allowance to said defendant board his certain verified claims and demands against defendant county in the *579 amounts and in the words and figures appearing in exhibits “ A ” to “ O ” inclusive, attached to and made part of the schedule of said cross demand or account of defendant against plaintiff, which is hereto attached and made part of this answer, pretending and asserting that this defendant was indebted to him in the various amounts for the various services set forth in said exhibits; and the then board of county commissioners of said county, relying upon tbe pretensions, assurances and assertions of plaintiff, and at that time believing tbe said claims to be just and true and legal demands against said defendant county, paid the same and all thereof to the aggregate of $4,135.55, when in fact and in truth and as defendant has but recently learned, all that portion of said claims and demands specifically set out in said schedule, to the aggregate of $2,618.71, ivas an overcharge and was not due plaintiff from defendant as pretended, asserted and assured by him, or otherwise due to him, and that defendant erroneous^ and by mistake paid plaintiff for those items of service contained in said schedule or account against plaintiff, in the amounts therein specified, aggregating $2,618.71 as aforesaid, for many of which said items of service the statute prescribes no fees or other compensation, nor did said board by an exercise of discretion or otherwise than through error and mistake allow the same or any part thereof. And defendant says that by reason of such erroneous payments the plaintiff became and still remains indebted to defendant in the said sum of $2,618.71.”
In the schedules embraced (some ten printed pages), preceding each item, occurs the following: — “ To illegal and excessive fees, and overcharges made and presented by said Leonard against and paid by said county in error and by-mistake, and wrongfully charged and paid” or words of the same legal effect.
It is provided, Geni. Stat., see. 521: “ Each organized county within the state shall be a body corporate and politic.” * * *
Sec. 523. “ The powers of a county as a body politic and *580 corporate shall be exercised by a board of county commissioners therefor.”
By sec. 588 it is said: “ The board of county commissioners of each county shall have power.” * * *
“ Second. To examine and settle all accounts of the receipts and expenses of the county and to examine and settle and allow all accounts chargeable against the county, and when so settled they may issue county orders therefor as provided by law.”
Sec. 545. “No account shall be allowed by the board of county commissioners unless the same shall he made out in separate items and the nature of each item stated, and where no specified fees are allowed by law, the time actually and necessarily devoted to the performance of any service charged in such account shall be specified, which account so made out shall be verified by affidavit.”
The county commissioners therefore are invested with full and sole power to manage the business affairs of the county. “ They are necessarily vested with reasonable discretion in the administration of county affairs.” Roberts v. The People, 9 Colo. 458.
“ The rule governing the allowance of claims by the board of county commissioners is that the authority must be found in tiie statute, either in express words or by fair implication. In other words, in order to bind the county, the county commissioners must act within the scope of their authority. Where a claim is clearly not a legitimate charge against the county, the county commissioners have.no power to allow it, and its allowance would neither bind nor estop the county ; as, for example, where the commissions of a collector of taxes are fixed by statute at a certain rate per cent, and the board allows him a greater rate. But the compensation for every legitimate charge against a county is not fixed by statute, nor even expressly provided for. It is therefore within the functions of the board of county commissioners, in such cases, to allow reasonable compensation.” Roberts v. People (supra).
*581 It clearly appears from the account set out in the pleading that the services were performed by the clerk in the line of his duty; that the accounts filed were itemized and each verified; submitted to a preceding board of county commissioners ; allowed, and warrants drawn for them; that a subsequent hoard seeks to recover the money paid. It is not alleged that the services were not performed; that they were not in the line of official duty; that the money was obtained by fraud; that the several accounts were not duly itemized and verified ; nor is it alleged that the amount charged was excessive. It 'goes to the entire charge in each instance, declaring the entire amount an overcharge and illegal, and allowing nothing for the services rendered.
Taking into consideration the power and discretion vested in the board; and the further fact, which is not denied, that the services were performed; and the language of the court in Roberts v. People (supra) in regard to the discretion vested in the board, how can it be said by a subsequent hoard that the allowance of the respective claims was not permissible in the discretion of the former hoard, and their action conclusive ? And this presents the question. When there is neither fraud nor illegality in making the claims or in securing their allowance, can a subsequent board review the discretionary acts of a former board? We do not find it necessary to decide the question in this case, but reason and authority are both against it. It is true, as a general proposition of law, that money obtained by fraud or mistake can he recovered back, — modified in regard to mistakes in regard to the law. But when neither mistake of law nor fact is alleged, but only, perhaps, the abuse of discretionary power, how can it be said to have been paid by mistake, or to have been illegally obtained ?
It would seem that counsel for the county labored under a misapprehension in regard to the law in supposing that the board had no discretion, and that all payments were illegal where the services were not prescribed and fees fixed, by *582 overlooking the necessary discretion vested in the board, and vitally necessary in the administration of county business.
The allegations in the cross complaint are insufficient, in the manner pleaded, to constitute a cause of action.
The judgment of the court in sustaining a demurrer to certain parts of the cross complaint and instructing the jury to find for the defendant (appellee) upon the pleadings, was warranted and must be affirmed.

Affirmed.